FREDERICK HABERMAN, Respondent, *v.* JOHN O. BAKER, Appellant.

Although it is a matter of discretion with a court of equity as to whether it will enforce a contract for the purchase and sale of lands, it is a discretion which proceeds in its exercise upon settled rules and not arbitrarily, and if notwithstanding all the legal questions raised by objections or suggested from the records, the vendor is found to have the legal title to the premises and a legal right to convey as he has agreed, performance by the vendee must be decreed.

*It seems* the vendor's right to enforcement of such a contract should be considered more favorably than in the case where the proceeding is to compel the purchaser at a judicial sale to carry out his bid.

Where a highway is the dividing line between the lands of two adjoining proprietors, each owning to the center, and one of them conveys, bounding the lands along or upon the highway, in the absence of an express reservation in the deed, of his property in the highway, the deed conveys the fee to the center, subject to the public easement.

Where the grantor owns the fee of the soil of the whole highway, in the absence of facts raising a presumption of a contrary intent, the presumption is that the grantor intended to and the conveyance will be deemed to convey the fee of the whole highway.

In either case, where by the abandonment of public easement the highway ceases to exist, the land comprising it reverts to the primary condition of ownership and of use, and becomes a parcel of the adjoining property, and the grantee is entitled to the possession of that portion conveyed by his deed.

Where, therefore, certain lands in the city of New York were conveyed, bounded on the westerly side by an old road, title to the center whereof was in the grantor, and on the north by a road leading eastwardly from the other, title to the whole of which was in the grantor, and where, in the subsequent laying out and opening of city streets, the public use of pieces or gores of land, parts of the old road included in said titles, was abandoned, *held*, that the right to such use reverted to the successor in title to said grantee; that he had a full title to and right to convey the land bounded by the new streets; and so, was entitled to a judgment requiring a specific performance of a covenant for the purchase thereof.

*It seems*, the rule is different where the description in a deed bounds the land by the side of the highway, or where there is a city street the title to which is in the municipality.

*It seems* that where, upon foreclosure of a mortgage belonging to the estate of a decedent, the mortgaged premises are bought in by the personal representatives, they take on the character of the mortgage indebtedness, and so are as personalty in his hands, which he may dis-

pose of, and for which he is liable to account as such; and this is so, although the decedent left a will which confers no power upon his executors to sell real estate.

The heirs of the decedent, therefore, or his residuary devisees, take no direct interest therein, and it is not essential in order to convey a good title for them to join in a conveyance of the premises.

Nor is such joinder required because of the fact that the mortgagee took possession of the mortgaged premises, unless it appears that such possession had been for a sufficient length of time to give title by adverse possession.

(Argued June 4, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York entered upon an order made February 12, 1891, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action to compel the specific performance by defendant of a contract for the sale of real property.

The facts appear in the opinion.

*Robert Sturgis* for appellant. Samuel Stillwell never conveyed the land in what was known as Stillwell's road. The fee of the land is still in his heirs, subject, perhaps, to a right of way over the road. (*Hussner* v. *B. C. R. R. Co.*, 96 N. Y. 18; *Hall* v. *W. W. P. Co.*, 24 Wkly. Dig. 494; *Bookman* v. *Kuzman*, 94 N. Y. 272; *Mott* v. *Mott*, 68 id. 246; *Sloat* v. *McDougal*, 9 N. Y. Supp. 631; *Burr* v. *Mills*, 21 Wend. 290; *Oakley* v. *Stanley*, 5 id. 523; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id. 120; *People* v. *Colgate*, 67 id. 512; *White's Bank* v. *Nichols*, 64 id. 65; *English* v. *Bremar*, 60 id. 609; *K. C. F. Ins. Co.* v. *Stevens*, 87 id. 287; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 161, 162, 180, 183; *People ex rel.* v. *Jones*, 112 id. 597.) That the title is, to say the least, open to judicial doubt and, therefore, not marketable, and it is now well settled that where the vendor fails to show he has a marketable title that a purchaser will not be compelled to specifically perform. (*Schriver* v. *Schriver*, 86 N. Y. 584.)

*Samuel Untermeyer* for respondent.  The intention and effect of the deeds from Stillwell to Bowne and Charlton was to convey the fee of the property in Stillwell road and the fee in the adjoining half of the Bloomingdale road.  (*In re Ladue,* 118 N. Y. 213; *Bissell* v. *N. Y. C. R. R. Co.,* 23 id. 61; *Wager* v. *T. U. R. Co.,* Id. 526; *Perrin* v. *N. Y. C. R. R. Co.,* 36 id. 120; *Wallace* v. *Fee,* 50 id. 694; *Mott* v. *Mott,* 68 id. 246; *K. C. F. Ins. Co.* v. *Stevens,* 87 id. 287; *Story* v. *N. Y. E. R. R. Co.,* 90 id. 122, 161; *French* v. *Carhart,* 1 id. 96; *Putzel* v. *Van Brunt,* 8 J. & S. 501; *Livingston* v. *Ten Broeck,* 16 Johns. 14; Cowen & Hill's Notes to Phillips on Evidence, No. 526, p. 802; *Champlin* v. *Pendleton,* 13 Conn. 23.)  Conceding it to be true, that after the conveyance to Bowne, Stillwell laid out a road running along his own property, his deed to Charlton would then convey the fee of the entire road-bed.  (*In re Robbins,* 34 Minn. 99; *Taylor* v. *Armstrong,* 24 Ark. 102.)  The heirs or devisees of William Edgar who, it is said, was at the time of his death a mortgagee in possession of the property mortgaged to him, can have no possible interest in the gore north of the old Stillwell road.  (*Runyan* v. *Mersereau,* 11 Johns. 535; *Kortright* v. *Cady,* 21 N. Y. 344.)  All of the objections urged by the defendant are cured by adverse possession.  (Code Civ. Pro. §§ 369, 370.)

GRAY, J.  In this action, which was brought to compel the defendant to perform his part of an agreement with plaintiff and to complete his purchase of the plaintiff's land, various objections to the plaintiff's title were raised and have been more or less discussed.  If any of them are substantial, the defendant should not, of course, be compelled to accept the title tendered by plaintiff.  Whether equity will enforce the specific performance of such contracts is a matter resting, it is true, in discretion; but it is a discretion which proceeds in its exercise upon settled rules and not arbitrarily.  Where the case is one in which the proceeding is against the purchaser at a judicial sale to compel him to carry out his bid, the discre-

tion of the court may be influenced differently from a case like the present, where the action is upon the private contract of the parties. But this is just; for, in the former case, the bidder is warranted in assuming not only that the title to the land is readily marketable, but also that the judgment of the court has set at rest all questions which might reasonably be raised concerning the validity of the title offered. In all cases, I suppose that the quality of the title must be the same ; but where the deliberate convention of private parties results in a contract for the sale and purchase of lands, the matter of the plaintiff's right to an enforcement of that contract should be considered more favorably ; and if, notwithstanding all the legal questions raised by objections, or suggested from the records, the vendor is found to have the legal title to the premises and has a legal right to convey, as he has agreed, performance by the vendee must be decreed. That precise rules can be laid down to be observed in the various cases, where the object is to compel the specific performance of agreements for the sale and purchase of lands, I doubt, and their necessity is not apparent. The discretion of courts in such cases, to cite the observation of Lord ELDON in *White* v. *Damon* (7 Vesey, 35), and which Sir John Romilly, Master of the Rolls, quotes in *Haywood* v. *Cope* (25 Beavan, 140), "must be regulated upon grounds that will make it judicial."

In this case, the objections relate to the plaintiff's title to and right to convey certain pieces of land, which formerly were included in highways, since abandoned. His contract was to sell a distinct parcel, or block of land, lying between 86th and 87th streets, the boulevard and the 10th avenue in the city of New York. At about this point, an old highway, known as the Bloomingdale road, skirted, on the west, the lands, of which this block is a part, and in laying out the boulevard, the old highway was here mainly taken in. From the Bloomingdale road, at about where 87th street meets the boulevard, there led off to the eastward a way which was known as Stillwell's road or lane. As a consequence of the alteration of lines, caused by opening and regulating the boulevard, 87th

street and the 10th avenue, pieces or gores of land were added to the property of the plaintiff's grantors to form the present block, to which, from their having previously constituted parts of the abandoned highways, the title is deemed to be in the heirs of Samuel Stillwell.

Originally, Samuel Stillwell owned the farm or tract of land, of which the block now in question once formed a part, and the lane, or road, bearing his name was built by him for purposes of convenience of access for himself and to other adjoining parcels of land, which he had sold to various parties. It ran wholly upon his own lands and partly upon the northerly margin of the premises in question. For some distance eastwardly from the Bloomingdale road, the land on the other, or northerly, side of this lane belonged to other owners. The first conveyance made by Stillwell, in the chain of this title, was made in 1803, to John Charlton. The description of the premises conveyed bounded them " along the Bloomingdale road " and, where they adjoined Stillwell's road, " along said road   *   *   *   to the Bloomingdale road." By such a description a grantor usually is deemed to convey the fee of the soil to the centre of the road, where it is the dividing line between properties. In the absence of some express reservation by a grantor of his property in a road, such as would be implied where an easement over it was alone granted and the description ran to and along the side of it, as it was in *Jackson* v. *Hathaway* (15 Johns. 447), or, later, in the case of *Mott* v. *Mott* (68 N. Y. 246), a conveyance of lands, generally bounded as along or upon a road, will convey the fee to its centre. (See *Jackson* v. *Hathaway, supra*.)

A recent decision of this court, in its Second Division, made with respect to another part of Stillwell's property, has settled this question of what passed of this private road, in the case of a grantee of land adjoining and where the description of the grant was " along the lane of said Stillwell intended for a road, etc." It was held that under the deed the fee of the soil was granted to the centre of the road when built. (*Matter of Ladue*, 118 N. Y. 213.)

To complete the title to all of Stillwell's road, the plaintiff attempts to deduce a title to the further half through the original conveyance of lands made by Stillwell to R. L. Bowne, in November, 1795, which comprised a tract extending from the Bloomingdale road eastwardly and along the land subsequently laid out and used as a lane. In this deed there was no reference to any road and the only ground for presuming anything with regard to its dedication, or existence, at that time, was that in a conveyance of other parts of Stillwell's property, subsequent in time to Bowne's, a map annexed thereto showed this lane as laid out. As this map bore a date earlier than that of the deed to Bowne, the plaintiff argues that Bowne's conveyance must have been with reference to the road as shown thereby. I think, however, that such an inference is hardly permissible from the mere fact of the date. Something further was required as proof concerning the map, or of the laying out of the road, in order to engraft upon the grant to Bowne any such additional right of property. But it is not necessary to depend upon that line of argument, in aid of the plaintiff's title to the land formerly comprised within the abandoned highway. From the proofs I think we must assume that Stillwell conveyed to Bowne with no reference to this lane. / The question then is whether, as the road was laid out upon Stillwell's land, a title in fee to the whole road-bed did not pass to Charlton, or his grantees, subject only to any easements in its use as a road. This question I think must be answered in the affirmative. That any property in the northerly half of the road should have remained in Stillwell, or his heirs, would require the support of some presumption bearing upon his interests, or relating to some necessity in fact; the elements of which, I think, we cannot find. The only interest in the lane, or in its maintenance as such, was possessed by Stillwell's grantees. He had parted with all of his land bordering on the lane. The natural presumption, and one which seems to flow from the established rules, would be that, in bounding his grant to Charlton along this highway, Stillwell had conveyed his fee in the road-bed. Where the highway

divides two properties the owner of each abutting piece is pre-
sumed to own to the centre of the way. The presumption is
based on the idea that the adjacent owners originally con-
tributed the land for the road, and this presumption assumes
that nothing militates against it in the facts of ownership.
But if the grant of the abutting property went only to the
side of the road, or the public authorities are vested with the
right to the soil of the street, the presumption cannot exist.
(*Dunham* v. *Williams*, 37 N. Y. 251.)

Where the highway has been, as in the present case, wholly
made from and upon the margin of the grantor's land, his sub-
sequent grant of the adjoining land should be deemed to com-
prehend the fee in the whole road-bed; upon the same principle
that exists for giving the fee to the centre in the other cases.
The grantor should be presumed to have intended by his con-
veyance the full investiture of the grantee with all appurtenant
property rights in the highway. What other intention could
be consistently supposed? In the early case of *Jackson* v.
*Hathaway* (*supra*), it was observed that there was reason for
intending that the parties to a conveyance of property bounded
along or upon a highway meant to the middle of the highway.
Would there not be equally reason for the legal intendment
that they meant the whole highway, where it was the property
of the grantor in its entirety? Can we suppose an intention
in the grantor to reserve to himself, or to his heirs, the fee in
half of the highway? I think not.

As to the grantor, the control and beneficial use of the road
have ceased to be of importance, but to the grantee they must
be important, if not essential, for many patent reasons. The
case of *Bissell* v. *Railroad Company* (*supra*), though applied
to a case where the question of title related to only half of the
street, is authority for the proposition that there is no reason
to infer an intention in the grantor to withhold his property
in, or title to, the land covered by the highway, after parting
with all his right and title to the adjoining land.

Our attention has been directed to several cases in the courts
of other states, where this question has been discussed and

similarly decided, and in some of them the reasoning is upon the authority of *Bissell* v. *Railroad Company*. (See *In re Robbins*, 34 Minn. 99, and *Taylor* v. *Armstrong*, 24 Ark. 102, and, as well, *Watrous* v. *Southworth*, 5 Conn. 305 ; *Champlin* v. *Pendleton*, 13 id. 23.)

I am, therefore, of the opinion that under Stillwell's grant to Charlton, the ownership of the soil of Stillwell's road, where adjacent to the property granted, passed to the grantee as a parcel of the grant. So long as the road was required as such and an easement had been acquired by the public, the owner-ship of its soil may have been subjected to the use. But when, after the year 1846, the public easement had been abandoned and the highway ceased to exist, the land comprising it reverted to primary conditions of ownership and of use, and became a parcel of the adjoining property, from which it was taken originally./ The fee in the land of Stillwell's lane being in the plaintiff, and because of the description of the grant as to the Bloomingdale road, questions as to the title to the gore, pro-duced by the change in the westerly line of the tract by the laying out of the new boulevard, are disposed of. The own-ership of the land in the lane carried the fee to the centre of the Bloomingdale road opposite to the lane, and that, with the description along the Bloomingdale road, comprehended the gore in question.

In 1847, Eighty-sixth street (but not Eighty-seventh street) having been theretofore legally opened and in use, an agree-ment as to a division of lands was made between John Adams, then in possession of the property composed of the block in question, and Herman LeRoy Edgar, in whom had become vested the legal title to the lands north of Stillwell's road. The effect of that agreement was to make the south side of Eighty-seventh street (subsequently opened), from the boule-vard to Tenth avenue, *pro tanto*, a division line between their properties. But the appellant interposes certain objections as to the title of LeRoy Edgar and affecting his right to conclude other interests in the lands by such an agreement. After Bowne had acquired the title to the tract of land, of which a

portion bordered upon the north side of Stillwell's road, he mortgaged the same in 1809 to William Edgar as security for the repayment of a loan. Upon a sale, decreed in proceedings instituted, after the mortgagee's death, to foreclose the mortgage, the premises were purchased by Herman LeRoy Edgar in his individual name. He was, however, at the time the administrator, with the will annexed, of William Edgar, the deceased mortgagee, and it is argued that he acquired the title to the premises purchased in the capacity of trustee for those interested in the testator's estate, and that releases were needed to cut off their interests. The point is not tenable, however; for, though it is true that he held the property in trust, nevertheless the premises so acquired took on the character of the mortgage indebtedness, and were as personalty in the administrator's hands, which he could dispose of and was liable to account for as such.

The case of *Lockman* v. *Reilly* (95 N. Y. 64, 71) is sufficiently in point as to this. In that case it was held that whether the executors took a deed in their names as such executors, or in their individual names, was immaterial. The testator's heirs could take no direct interest in the land so purchased, and could not dispute the title of a purchaser from the executors, and this would be so, it was said, even though no power of sale might be contained in the will.

Another objection raised by the appellant is that the mortgagee Edgar had taken possession, and had become seized of the property by a title, which descended to his heirs and was not affected by the mortgage foreclosure. The point is not discussed, and does not seem serious. It need be but briefly adverted to in answer. It seems to me to be sufficient to say that while it is true that the mortgagee went into possession of the mortgaged premises, the possessory right gained thereby was to satisfy the mortgage debt out of the property mortgaged. Had the debt been paid before any adverse title had been gained, the possessory right would have ceased and the mortgagor would have been entitled to repossess himself of the property. But upon the foreclosure of the mortgage

by the executor of the mortgagee, it not only appeared that Bowne, the mortgagor, had regained possession of the mortgaged premises within 18 years of the time that his mortgagee had entered, but all claims to any interest therein were expressly waived, except for the amount due upon the bond and mortgage. Further than this, it is to be observed that it was found as a fact by the trial court that the devisees of William Edgar, Jr., to whom Edgar, Sr., the mortgagee, had bequeathed and devised his residuary estate, in which were comprehended the mortgage interests in question, had conveyed all their right, title and interest to the grantee Herman Le Roy Edgar. As that grant conveyed the lands, which included the premises in question, and by boundaries as rearranged under the agreement of division between said Edgar and Adams, the plaintiff's predecessor in interest, any possible claims outstanding in William Edgar, Jr.'s, devisees were relinquished, and their conveyance quieted all questions as to any land which, by the rectangulation of the line of the south side of 87th street, would be left between it, the westerly side of 10th avenue and the north line of what was the old Stillwell lane.

I have discussed those objections which seemed to me to offer any legal questions requiring an expression of opinion, and I think neither they nor any others are material, or disclose any flaw in the plaintiff's title. The appellant, therefore, should be compelled to perform his contract.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.