SUMMERFIELD McLEAN, Plaintiff, v. FRANCOIS J. G. LADD, Defendant.

*Testamentary trustees — unauthorized purchase of land with trust funds — the legal title vests in the trustee — his right to mortgage it — rights of beneficiaries.*

Thomas Connell died leaving a will in which it was stated that as his personal estate was insufficient to pay the legacies given by the will he devised his real estate to his executor, in trust, to sell it and to pay from the proceeds of the sale his debts and the legacies given by the will, and in the meantime to collect the rents and profits.

He gave his executor a power of sale, but gave him no power to mortgage or to reconvert personal into real property.

In July, 1873, John Quinn qualified as executor, and in May, 1888, John W. Collins, who then owned certain land, in conjunction with his wife, conveyed the same to John Quinn, as trustee under said will.

A part of the consideration for this conveyance was a mortgage then existing upon the premises for $1,500, and the rest was money of the trust estate. This mortgage was paid out of the moneys obtained on a mortgage covering the premises given in August, 1884, by Quinn, as such trustee, to a building and loan association, which subsequently foreclosed its mortgage, making, as sole defendant in the action, Quinn, as trustee, who demurred to the complaint upon the ground that the beneficiaries of the trust were not made parties.

This point having been decided against him, a judgment of foreclosure and sale was entered, under which the property was sold to the association, which subsequently conveyed it to Summerfield McLean. Thereafter McLean agreed, in writing, to sell the premises to Francois J. G. Ladd, but the latter, upon an examination of the title, refused to accept it.

Upon a submission of the controversy as to the validity of the title, upon an agreed state of facts:

*Held*, that specific performance should be decreed.

That, although Quinn used trust funds to make his purchase from Collins, the legal title to the premises vested in Quinn, and that, as the title did not come to him under the will of Connell, the mortgage given by Quinn, as trustee, to the loan and building association was a valid instrument.

That the beneficiaries under the will of Connell never acquired any direct estate or interest in the premises.

That, hence, they were not necessary parties to the foreclosure of the mortgage given by Quinn, as trustee, to the loan and building association.

That the action of Quinn was improper, and that the beneficiaries had a right either to claim the investment made by him or to make him account for the money, but that they were not entitled to both remedies. That until they did some affirmative act, looking towards an election to accept an interest in the lands, the trustee had power to convert them into money.

SUBMISSION of a controversy without action, upon an agreed state of facts, between Summerfield McLean, as plaintiff, and Francois J. G. Ladd, as defendant.

*Abner C. Thomas*, for the plaintiff.

*A. W. Byrt*, for the defendant.

DYKMAN, J.:

A controversy has arisen between these parties which has been submitted to this court for judicial determination upon a conceded state of facts. The course pursued is to be encouraged because it furnishes a rapid and inexpensive method for the settlement of dis-

putes, and secures a decision as certain and satisfactory as could be reached after the most obstinate litigation. The basal facts are these: Thomas Connell made a last will and testament, and two codicils thereto, in which William Connell, John Quinn and Philip Lyons were named as executors. After the death of the testator, his will and codicils were proved and admitted to probate, and letters testamentary were issued thereon to John Quinn, one of the persons named as such executors, on the 14th day of July, 1873.

The third clause of the will reads as follows, and remains unaffected by the codicils:

"*Third.* Inasmuch as my personal estate is insufficient to pay the legacies hereinafter given, I hereby give and devise to my executors hereinafter named, or to such of them as shall qualify, all my real estate and chattels real of which I may die seized or possessed, in trust to sell and dispose of the same at public or private sale, in such parcels, at such several times and upon such terms as shall seem to them expedient and most conducive to the interests of my estate, and to apply proceeds thereof, together with the avails of my personalty not herein specifically devised, to the payment of the debts and of the legacies and bequests herein contained. And upon such sale or sales I empower my executors, or such of them as shall qualify, and the survivor of them, to execute and deliver good and sufficient deeds of conveyance, and to receive payment either wholly in cash, or, in their discretion, partly in cash, and the balance, not, however, exceeding sixty per cent of the purchase-price in the bond of the purchaser, secured by mortgage upon the property conveyed, and until such sale I direct my executors to collect the rents and profits of my real estate, and to apply so much thereof as may be necessary to the payment of the taxes and assessments thereon, and if the receipts from rent shall be insufficient therefor, then to pay the deficiency from the avails of my personal estate."

On or about May 1, 1888, John W. Collins, being then the owner in fee of the premises, with his wife, executed and delivered to John Quinn, as trustee of and under the last will and testament of Thomas Connell, deceased, a deed of conveyance containing a general warranty, with the usual full covenants and proper form to convey the title of the premises.

The consideration of that conveyance was $3,000, more than

fifteen hundred dollars of which was paid by deducting and allowing that amount from the consideration for a valid mortgage on the premises made by Theodore D. Lyons and wife to one David Carll, to secure the payment of $1,500 and interest, with all accrued interest thereon from August 1, 1887; the balance of the consideration, being between fourteen and fifteen hundred dollars, was paid by Quinn in cash.

On or about August 17, 1888, John Quinn, as trustee of and under the last will and testament of Thomas Connell, deceased, executed and delivered to the Harlem Co-operative Building and Loan Association a mortgage to secure the sum of $3,000. Part of the money advanced on that mortgage was used in paying the last-named mortgage for $1,500, which was thereupon, on or about the 18th day of August, 1888, canceled and discharged of record, and all or part of the balance thereof was used and expended by the mortgagor in improving the premises.

In making the purchase of the premises by Quinn, he used the money which formed a part of the assets of the estate of Connell in his hands as trustee. Thereafter an action was commenced in the Supreme Court in Westchester county by the Harlem Co-operative Building and Loan Association against John Quinn, as trustee of, and under the last will and testament of, Thomas Connell, deceased, to foreclose the last-named mortgage for $3,000.

In that action John Quinn, as trustee under the last will and testament of Connell, was duly served with the papers, and appeared by his attorney, but no other person was joined with him as a defendant.

John Quinn demurred to the complaint on the ground that there was a defect of parties defendant, in that the complaint was to foreclose a mortgage alleged to have been made by him as trustee, and the beneficiaries having an interest in the estate were not made parties defendant. After argument on that demurrer such proceedings were had that the judgment of foreclosure and sale was entered in that action about January 18, 1890, in the usual form, and the referee was appointed to sell the mortgaged premises, and out of the proceeds to pay the claim of the plaintiff, with interest and costs.

Quinn appealed from that judgment to the General Term of the Supreme Court where the judgment was affirmed, with costs. The

referee named in the judgment thereafter sold the premises at public auction, and on the sale the Harlem Co-operative Building and Loan Association became the purchaser of the property, and in pursuance of the sale the referee delivered a deed of conveyance of the premises to the purchaser, the Building Association, on the 14th day of March, 1890. The proceedings in the foreclosure suit were regularly conducted.

The Harlem Co-operative Building and Loan Association conveyed the premises to Summerfield McLean, the plaintiff in this action, by deed of conveyance dated January 30, 1892, which was in. due form and has been regularly recorded.

On receiving his deed of conveyance the plaintiff McLean executed and delivered a purchase-money mortgage to the grantor, the Building Association.

On the 30th day of January, 1892, the plaintiff and defendant made an agreement in writing by which the plaintiff agreed to sell and convey the same premises to the defendant for $3,000, to be paid as follows: Fifty dollars at the date of the agreement, $2,800 by assuming the payment of the purchase-money mortgage upon the premises, and the balance, $150, at the time of the delivery of the deed of conveyance. The defendant paid fifty dollars on account of the purchase-money at the time of the execution of the contract, and thereafter incurred an expense of $100 in examining the title to the premises.

On or about February 15, 1892, the parties met at the place mentioned in the agreement, and the plaintiff made a tender of performance of his contract, which was, in all respects, sufficient. The defendant then refused to accept the title or carry out the contract, and demanded a return of the money paid by him on account thereof, with $100 for expenses incurred in examination of the title, on the sole ground that the title of the plaintiff was not a good and sufficient title, and that the deed tendered by him could not, for that reason, convey the fee simple of the premises.

The questions submitted to the court are these:

*First.* Is the plaintiff entitled to judgment against the defendant for the specific performance of the agreement to purchase the property on receiving a deed of conveyance thereof, in the manner and

form required by the contract, by paying the balance of the purchase-money directed to be paid, and assuming the mortgage of $2,800 ?

*Second.* Is the defendant entitled to a judgment against the plaintiff for the return to him of the fifty dollars paid on the contract with the further sum of $100 for expenses incurred in the examination of the title ?

*Third.* Are either of the parties to this submission entitled to any further or different relief against the other ?

In the third paragraph of his will Thomas Connell made a recitation that his personal property was insufficient for the payment of the legacies bequeathed, and gave to his executors, or such of them as should qualify, all his property, real and personal, in trust to sell and dispose of the same and apply the proceeds, with the avails of his personal property, to the payment of debts and legacies, and in the meantime to collect the rents and profits of the real property.

The will bestowed no power of reconversion or to execute mortgages, and no such power will be inferred, because it cannot become necessary to carry into execution the scheme of the will.

The money paid to Collins by Quinn, upon the purchase of the property, belonged to the estate of Connell, and was in the hands of Quinn, as trustee, and such use of the funds was in contravention of his trust, yet the conveyance of Collins transferred the title to Quinn, either individually or as trustee, and, for the purposes of this case, the capacity in which he held the title is quite immaterial. But the fact that Quinn did not take title to the property under the will of his testator is quite material, for if he had so acquired the title no mortgage upon the property would have been valid, because no power to mortgage is contained in the will.

In relation to property purchased by Quinn, even though the purchase was made with trust funds, the same disability does not arise.

The conveyance to him invested him with the full legal title, although, as between him and his beneficiaries, it was impressed with a trust which they could enforce, yet, as the title did not come to him under the will of his testator, his want of power to mortgage under that instrument did not apply, and, therefore, the mortgage executed by him was a valid instrument.

The fact that the property did not belong to the testator at the time of his death is material in another respect. If it had so belonged

to him, then Quinn would have no title, except such as he acquired under the will as trustee, but now, so far as the title is concerned, the conveyance to him had the same effect as if it had been taken to him as an individual, and the will had no direct operation upon it.

The beneficiaries never acquired any direct estate or interest in the property. It never was subject to any of the trusts in the will, and, therefore, no one can dispute the conveyance to Quinn or his mortgage thereunder.

These conclusions receive support from the adjudicated cases which have arisen under purchases of real property by executors upon sales under judgments of foreclosure of mortgages belonging to their testator.

Such was the case of *Lockman* v. *Reilly* (95 N. Y., 64), where the executors, on foreclosure of their mortgage, became the purchasers and received the conveyance in their name as executors, and it was held that, whether the deed was taken in the name of the executors as such, or in their individual names, the legal title was in them, and they might sell the same although no power of sale was contained in the will.

The same question again received the attention o the Court of Appeals in the case of *Haberman* v. *Baker* (128 N. Y., 253), and it was there held that when, " upon foreclosure of a mortgage belonging to the estate of a decedent, the mortgaged premises are bought in by the personal representatives, they take on the character of the mortgage indebtedness, and so are as personalty in his hands, which he may dispose of, and for which he is liable to account as such, and this is so, although the decedent left a will which conferred no power upon his executors to sell real estate." And, further, that neither the heirs of the decedent nor his residuary devisees take any direct interest in the property.

The case of *Valentine* v. *Belden* (20 Hun, 537) was an action like this to compel a purchaser to take title. The plaintiff foreclosed a mortgage belonging to his intestate and became the purchaser at the sale under the judgment and took a deed in his own name individually. He then entered into a contract to sell and convey the premises to the defendant, who subsequently refused to consummate the agreement on the ground that the plaintiff, being the adminis-

trator of the estate could not purchase the premises under the judgment, and was, therefore, unable to convey a good title thereto.

The court held that the land thus purchased became a substitute for the bond and mortgage, and that the plaintiff acquired as perfect title to the land as he possessed to the bond and mortgage previous to the foreclosure, and the conveyance which he tendered to the defendant would vest in the latter a perfect title to the premises.

In the case of *Cook* v. *Ryan* (29 Hun, 249), the plaintiffs, as executors, brought an action to foreclose a mortgage owned by their testator. Pending the action the property was conveyed to the plaintiffs as executors, and the action was discontinued. Subsequently a moneyed judgment was recovered against the plaintiffs as executors, and it was held that they had power to sell the property although no power of sale was conferred by the will, and that a purchaser from them would acquire a good title.

The court there said in the course of the opinion : " They not only have power, but it is their duty to sell and dispose of the property, and to convert it into cash for the payment and discharge of the liabilities of the estate of their testator, and their conveyance will constitute a perfect title."

That case received an approving quotation from the Court of Appeals in *Lockman* v. *Reilly* (*supra*). In the action to foreclose the mortgage executed by Quinn to the building association, it was unnecessary to make any parties defendant except the mortgagor, because, as we have seen, the beneficiaries under the will took no interest in the property and the title was vested in him alone. Moreover the former decision of this General Term is conclusive on that question.

It is, perhaps, unnecessary to say that our decision does not justify the action of Quinn in making the purchase of this property with trust funds ; on the contrary, such action was improper, and the persons entitled to the money used in making the purchase had the right, by appropriate proceedings, to have the property adjudged to belong to them, or they might require the trustee to account to them for the money so employed. But they could not have both. (*Baker* v. *Disbrow*, 18 Hun, 29 ; affirmed in the Court of Appeals, 79 N. Y., 631.) In that case, it was said : " The improper investment is considered, as against the trustee himself, as equivalent to no

investment, but, in favor of the *cestui que trust*, it gives an option to claim either the investment made or the replacement of the original fund, with interest according, as the one or the other may be most for his benefit."

It was the right of the beneficiaries, under the trusts in the Connell will, to have the entire estate converted into money, and until they did some affirmative act looking toward an election to accept an interest in land, their interest was in the fund as personal property, and the control of the trustee over the land, and his duty to convert it into money, and his power to make such conversion was full and complete.

In the case of *Rogers* v. *Paterson* (4 Paige, 409), a trustee of a legacy for an infant, *feme coverte*, which was invested on bond and mortgage in the name of the trustee, took a release of the equity of redemption, thus acquiring the legal title. The *cestui que trust* died during her infancy, and whether the rights of the infant were those of an owner of land or of a beneficiary of a legacy, and, also, whether the property descended to her heirs-at-law or passed to her husband, were the questions presented, and it was held that it continued personalty, and passed to her husband.

Our examination leads us to the conclusion that the plaintiff is entitled to judgment against the defendant for a specific performance of the contract.

Barnard, P. J., and Pratt, J., concurred.

Judgment for plaintiff on submitted case, with costs.