# Barker, *et al. v.* Mobile Electric Co.,

## *Bill to Declare an Easement in, and to Enjoin the Obstruction of an Alley.*

(Decided April 18, 1911. Rehearing denied May 5, 1911.
55 South. 364.)

1. *Boundaries; Monuments; Courses and Distances.*—Where by giving monuments a controlling influence, absurd consequences would ensue, and where it is obvious that courses and distances furnish the most certain guide to the location and quantity of the land, courses and distances must be followed, and the rule that in the description of the boundaries of land conveyed, monuments, whether natural or artificial, dominate courses and distances, does not apply.

2. *Same; Evidence.*—Evidence examined and held to show that the alley was located on the lands of another who held exclusive possession thereof as his own, and that the adjacent owner had no rights therein.

3. *Same; Distances; Courses.*—A deed conveying a lot on the side of an alley, describing the lot by depth so as to take in a part of the alley, but further describing it as extending to a point on the alley, and thence along the boundary line of the alley, does not convey any part of the alley.

4. *Easement; Injunction; Right of Complainant.*—One seeking an injunction to protect a right of way over an alley must establish his right thereto, and cannot rely on the weakness of the title of the adversary party.

5. *Same; Establishment; Rights Acquired.*—Where a way established as of legal right divides the property of two owners, the presumption is that each has contributed the land for the way in equal parts, and a conveyance of an abutting ownership carries a fee to the center of the way; where the way has been laid out entirely on the land on one side of the property line, a subsequent grant by the owner must be deemed to convey the fee in the whole way.

6. *Same; Right of Way; Adverse User.*—Where one has no title to the soil in a way which he uses as common with the owner, his user is presumptively permissive, and so remains until knowledge of the claim as of right is brought home to the owner, and to establish an easement by adverse user, the user must have been adverse and continuous for a period of time which will pass title to the land by adverse possession.

7. *Same; Evidence.*—The fact that a tenant of one claiming an easement in a right of way by adverse user had complained that on one occasion, that poles had been piled on the right of way obstructing it, and that the agent of the owner removed the same, was not evidence of an assertion of right to use the way sufficient to ripen into title by adverse user.

[Barker, et al. v. Mobile Electric Co.]

8. *Evidence; Ancient Documents.*—A copy of the map of the city, prepared about fifty years ago by one employed by the city to lay out a map thereof, is an ancient document, and when coming from the proper custody is competent to show boundary lines of property owners.

9. *Estoppel; By Deed; Person Estopped.*—Recitals in a deed as to the boundaries of the land thereby conveyed are not binding on strangers to the deed.

10. *Same.*—Where the owner of the entire frontage on a street conveyed a certain amount of frontage to a grantee, and subsequently conveyed to a third person a further frontage, the first grantee and those claiming under him, were not estopped, by the subsequent deed, from relying on the boundaries described in the earlier deed, especially where the deed to the third person described the land conveyed as bounded by the land of the grantee.

11. *Deeds; Property Conveyed; Description.*—Where the evidence showed that the entire length of the square was 242 feet, that complainants held under deed describing their lot as 82 feet deep from the street on which it fronted, and bounded on the rear by the land claimed by defendant under deeds describing the depth of his lot as 157 feet from the opposite street, complainants did not show title to an alley way which lay 82 feet from the street on which his lot fronted.

12. *Adverse Possession; Effect; Evidence of Title.*—Actual possession of land for about fifty years under color of title extending proximately to the boundary line of the land of an adjacent owner, and exclusive user of an alley over the land for over thirty years is of itself evidence of title to the alley.

13. *Principal and Agent; Acts of Agent; Effect as to Principal.*—The mere fact that an agent of one claiming to be the sole owner of a right of way had joined in a petition to the board of public works of a city, requesting that one-half of the cost of paving the street in front of the way should be taxed against the owner, did not estop the owner from insisting on his exclusive ownership of the way, especially where the agent was unacquainted with the status of the title at the time, and the adjacent owner claiming an interest in the way, did not suffer any change of condition by reason of said petition.

14. *Landlord and Tenant; Estoppel of Tenant.*—The fact that one owning the soil of an alley and the exclusive right to use the same accepted a lease from the adjacent owner describing the alley as a joint alley used by the parties jointly, did not estop him from asserting his superior right and title.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOS. H. SMITH.

Bill by Prelate D. Barker and another against the Mobile Electric Company to declare an easement in an alley, and to enjoin its obstructions. From a decree for respondents, complainants appeal. Affirmed.

GAILARD & MAHORNER, and GREGORY L. and H. T. SMITH, for appellant. In construing descriptions of boundaries, monuments, whether natural or artificial, dominate courses and distances.—*Crampton v. Prince,* 83 Ala. 250; *Pearson v. Heard,* 135 Ala. 348. The legal presumption is that the owner on an alley owns the soil to the center thereof and this presumption places the burden on complainant of proving that such is not the fact.—*Haberman v. Baker,* 37 N. Y. 251; 14 Cyc. 1181. The court erred in admitting the map made by the city engineer, as this was not even prima facie evidence.— 56 Ala. 327; 63 Ala. 284. The burden was on the respondent to show that the use of the way was by license, and not adverse.—*Wanger v. Hipple,* 13 Atl. 81; *McKenzie v. Elliott,* 24 N. E. 966; 12 A. & E. Encyc. of Law, 1200; 10 Ib. 299; *Jesse French Piano Co. v. Forbes,* 129 Ala. 477; *Sharpe v. Marcus,* 137 Ala. 149. The evidence shows that an agreement was entered into by complainant and respondent fixing the center of the alley as the dividing line between their property.—4 A. & E. Encyc. of Law, 860-865; 5 Cyc. 930, 936; *Magee v. Doe,* 22 Ala. 718. Such an agreement is not within the statute of frauds.—*Shaw v. State,* 125 Ala. 80; 26 N. J. L. 61; 35 Pa. St. 409; 4 Wheaton, 513, 14 South. 805; 24 Ill. 367; 17 S. W. 1047. This agreement estops the parties from later denying that such is the true boundary.—105 N. W. 367; 106 N. W. 862; 78 N. E. 649; 13 S. W. 30; 16 S. W. 877; 5 Cyc. 930, 936.

L. H. & E. W. FAITH, for appellee. The designation of the south boundary line of appellant's lot excludes any presumption that the fee to any part of the soil of the alley was covered by deed, or that the alley was claimed as an easement appurtenant to the lot so conveyed.—*Tus. Land Co. v. B'ham Realty Co.,* 161 Ala. 542. Monuments must give way to courses and dis-

tances in defining boundaries when to let the former control would lead to absurdities.—*Jackson v. Moore,* 6 Cow. 717; *Miller v. Cullom,* 4 Ala. 56. No way of necessity is shown.—*Trump v. McDonald,* 120 Ala. 200. No prescription is shown.—*Jesse French Piano Co. v. Forbes,* 129 Ala. 477; s. c. 135 Ala. 277. The joint use of the alley by the claimant with the owner is not an adverse user.—*Gaynor v. Bauer,* 144 Ala. 455; *Stewart v. White,* 128 Ala. 208; *Steele v. Sullivan,* 70 Ala. 589. Under these authorities the user will be referable to a license from the owner, and will be regarded as permissive, hence no right of easement by adverse user is made out.—*Jones v. Barker,* 50 South. 890. The fact that some of the deeds in appellant's chain of title say that the grantee shall have the right to use the alley in common did not prevent the soil of the alley from vesting in the purchaser originally, and his grantees.—*Gould v. Eastern Ry. Co.,* 7 N. E. 543. Appellants can take nothing because of the agent's offer to pay part of the paving taxes, or because of the lease taken by them.— *Blankinship v. Blackwell,* 124 Ala. 355; *Shroeder v. Packer,* 129 U. S. 689. Title and interest in land does not pass by estoppel.—*Hicks v. Swift Creek Mill Co.,* 133 Ala. 418; *Sullivan v. Conway,* 81 Ala. 152. The map was an ancient document, and admissible as such.

SAYRE, J.—Complainants seek an injunction for the protection of an alleged right of way over and through an alley at one time in use between their property and that of the defendant. By its cross-bill the defendant claims to own the soil of the alley in fee, unincumbered by any servitude, and would have the court make a quietus of complainants' claim of right. For many years the alley in question opened into Royal street, between St. Anthony and St. Louis streets, in

the city of Mobile. The square from which it issued had a front on the west side of Royal street of 242 feet, some inches more or less. The north line of this alley is 82 feet and 10 inches south from the south line of St. Anthony street, and its south line is approximately 140 feet north from the north line of St. Louis street. The alley is, or was during its use as such, 19 feet wide. Probably from a time prior to 1848—certainly from 1859, at the latest—and until 1892, this alley was precisely defined at its Royal street end by substantial buildings on either side which stood flush with the line of Royal street. The property to the rear on either hand was acquired from different sources, and the evidence as to that part of the alley differs somewhat from that which relates to the rights of the parties in respect to the part next to Royal street. We think on the whole that it lends weight to the defendant's case; but the mass of evidence is so great that we have avoided a detailed statement of the titles of the parties to the property attingent upon the alley towards the rear. The easement claimed is of value and consequence only as it may afford an approach to Royal street. From 1840 to about 1869 one McDermott owned and occupied the premises to the north now owned by complainants. English—there were two Englishes, father and son, who owned the property in succession, but for convenience we refer to them as English—under whom defendant claims, owned the property to the south on Royal street from 1835 to 1859, and that to the rear until 1868. The alley was defined by the erection of buildings on either side during the ownership of these parties. In 1892 the buildings on the property now claimed by complainants were condemned and destroyed by the municipal authorities. The English property having been acquired in the meantime by the

[Barker, et al. v. Mobile Electric Co.]

Electric Light Company of Mobile, defendant's imme-
diate predecessor in title, that company took also, in
1895, a lease of complainants' property from its then
owner, so that, from that time until shortly before this
bill was filed, the property on both sides of the alley
was in one possession.   Complainants state their case
substantially as follows:   That the soil of the alley at
the time it was opened was owned by McDermott or
jointly by McDermott and English; that McDermott
and English each claimed the ownership of the alley or
a part thereof, and opened it in mutual recognition of
their respective rights to its use; or that, wholly apart
from their alleged ownership of the soil, they have ac-
quired an easement of passage by prescription.   The
case here stated concedes throughout defendant's right
to the use of the alley.   The evidence for complainants
has been directed to the proof of two propositions: (1)
That they own a part, if not the whole, of the soil of the
alley; and (2) that for more than 20 years they were
in the open, notorious, continuous, and adverse user of
the easement claimed.

   1.   The early records bearing upon the title in ques-
tion are imperfect, and the measurements recited in the
conveyances shown are manifestly inaccurate.   We con-
sider the case on the evidence at hand.   Complainants
are in undisputed possession of a lot measuring 82 feet
on Royal street south from St. Anthony.   Except for
their use of the alley in common with those under whom
the defendant claims, to which we will refer later, nei-
ther the complainants nor their predecessors in ti-
tle are shown to have ever had a possession extending
south of the line 82 feet south from St. Anthony street.
From 1816 to 1835 the various deeds which appear in
their chain of title described their lot as fronting 72
feet on Royal street and bounded on the south by lands

of Thomas P. Norris and Louis Baudin. In a deed from George J. S. Walker to John Byrnes, dated February 9, 1835, the lot is described as fronting 82 feet on Royal street and bounded on the south by the property of English. A number of later conveyances, including that to McDermott in the year 1840, follow the description of the deed from Walker to Byrnes. In 1884 a deed described the lot as bounded on the south by an alley. In 1886 the City Railroad Company conveyed the lot at the corner of St. Anthony and Royal streets, fronting 85 feet on Royal, to Hannah Lazo. Its southern boundary is not described otherwise. Hannah Lazo, under the name of Canizas, conveyed to Tolbert by the same description in 1890. And so Tolbert to Jordan in the same year; Jordan to A. M. Blair in 1898; and A. M. Blair to F. G. Blair in 1903. The first effort to convey in terms a mere easement in the alley appears in a deed from F. G. Blair to A. M. Blair, dated March 26, 1904, in which the lot is described as fronting 84 feet on Royal street and bounded on the south by an alley. "This conveyance includes all grantor's interest in said alley." In 1904, April 4th, Blair and wife conveyed to complainants 85 feet, more or less, on Royal street, and "their right to use said alley, and whatever interest they may have therein." Having shown this much, complainants, in order to give to those descriptions in their early muniments of title which bound their lot on the south by the lands of Thomas P. Norris and Louis Baudin, and those which bound it by the property of English, a meaning which would extend their ownership beyond the point 82 feet south of St. Anthony street, undertake to show, in part at least, the right and title of defendant. They show by the recitals of deeds offered in evidence that in 1814 a Madame Baudin died seised and possessed of a lot on the corner

of St. Louis and Royal streets described as fronting 127 feet on Royal. The title to this lot passed in separate parcels and through several persons, heirs of Madame Baudin, into one Judson in 1815. In 1827 Judson sold first the 50 feet on the corner of St. Louis to Thomas P. Norris, and, a few days later, to Thomas P. Norris and Jonathan Hunt 77 feet on Royal, described as bounded on the south by the lands of Thomas P. Norris and on the north by the lands of the grantor. This Judson appeared also among the predecessors in title of the complainants. In 1816, one Kennedy, who subsequently got a patent from the United States, had conveyed to Judson the lot on the corner of St. Anthony and Royal streets, fronting 72 feet on Royal, and bounded on the south by a lot then owned by the grantee. In 1828 Judson conveyed the lot to Victor Gannard, describing it as fronting 72 feet on Royal street and bounded on the south by lands belonging to Thomas P. Norris. In 1831 English acquired the 50 feet next to St. Louis street from Norris, and in 1835 he got a deed from Hunt and Norris of a lot fronting 77 feet on Royal street and described in part as bounded "on the north by lands belonging now or late to Lewis Judson, on the south by lands belonging to Thomas M. English." From these conveyances complainants hold that we must infer, not only that Judson owned in his day the entire front on Royal street between St. Anthony and St. Louis, but that the deeds by which he disposed of designated frontages aggregating 199 feet on Royal street, 127 to Norris and Hunt, 72 to Gannard, must by reason of the further descriptions referring to the ownership of adjacent property, be held to have disposed of the entire frontage of 240 feet; and not only so, but that the effect of these conveyances was to fix the line between the two properties at a point 127 feet from St.

Louis street, thus allowing complainants' title to far overlay the soil of the alley in question.

This, on the principle that, in the description of the boundaries of land conveyed, monuments, whether natural objects or artificial marks, are allowed to dominate courses and distances.—*Crampton v. Prince,* 83 Ala. 250, 3 South. 519, 3 Am. St. Rep. 718. But, as was said in *Miller v. Cullum,* 4 Ala. 576: "This rule is not without its exceptions. These are to be ascertained by a reference to the reason or principle of the rule itself. —Ratione cessante, ipsa lex cessat. Thus, where, by giving to monuments a controlling influence, absurd consequences would ensue, or where it is obvious that courses and distances furnish the most certain guides to the locations and quantity of the land, the latter should be followed." "What is most material and most certain in a description shall prevail over that which is less material and less certain."—*Jackson v. Moore,* 6 Cow. (N. Y.) 711. It has been shown that, if the deeds under which McDermott and English claimed be taken as conveying only such property as they describe by frontage in foot-measure, they fail to account for about 40 feet of the square, and that in this twilight zone lies the alley in question. Defendant has undertaken to account for this part of the square by introducing a quitclaim from one Vecque of a lot on the west side of Royal street, between St. Louis and St. Anthony, "fronting on Royal street one hundred feet or thereabouts, be the same more or less," and bounded on the north by property formerly belonging to George J. S. Walker, and on the south by the property of English then occupied by him as a dwelling. This quitclaim was executed in 1836, and contained a recital that English was then in possession. It has been noted also that the Walker lot, when he came to make title, was described as having a

front of 82 feet instead of 72 feet as theretofore. If
the lot on the corner of St. Louis had then taken the
form which it kept for many years in later times—that
is, was inclosed and occupied as a residence lot showing
a well-defined front of 53 feet on Royal street—this
quitclaim would suffice to extend the possession of Eng-
lish far enough to account with close approximation
for the entire square, with the result that in subsequent
conveyances, under which complainants hold and claim
title, the call for a boundary on the south by the prop-
erty of English might be held to coincide with the call
for a front of 82 feet, thus leaving complainants with
no evidence of title beyond that line.

But there is no evidence of actual possession of any
part of the defendant's property at that time, nor can
the recitals of the quitclaim bind the complainants or
their predecessors who were strangers to it.

Now complainants' contention is that Judson's deed
to Norris and Hunt, being first in point of time, fixed
defendant's line at 127 feet from St. Louis street on the
theory of *Crampton v. Prince, supra.* But the deed to
Gannard was executed after the deed to Norris and
Hunt, so that neither the latter, nor their successors in
interest, are to be estopped by it. It derogated nothing
from any right, title, interest, or possession they may
have had at the time or acquired subsequently. More-
over, Judson's deed to Gannard did not describe the 72-
foot lot as bounded on the south by property which the
grantor had before that conveyed to Norris; but the lot
is described as bounded on the south by lands then be-
longing to Norris. It is apparent therefore that the
meaning of this description, and the true location of
the line to which the grantor referred, depended upon
matters of fact. Non constat, the land proximately
south of complainants' 72-foot line did at that date be-

long to Norris.   One call of Gannard's deed was for a
line 72 feet south of St. Anthony street.   If complain-
ants would show that the dominant call for a boundary
by property of another ownership established a different
line—a fact not to be presumed because it involves the
deed in conflict and ambiguity—the burden was on
them to show that fact.   And they are in the same pre-
dicament in regard to a number of later conveyances
under which they claim and in which their lot is de-
scribed as fronting 82 feet on Royal street and bounded
on the south by the property of English.

As for the lots in the rear, complainants' fronting on
St. Anthony street and defendant's on St. Louis, and
which are separated by this same alley, complainants
hold under deeds as early as 1840 describing their lot
as running south from St. Anthony street 82 feet, and
bounded on the south by the land of English.   Defend-
ant, on the other side, claims under deeds dated as early
as 1834 describing its property as running north 175
feet from St. Louis street.   So, then, if the case were to
be determined on the muniments of title antedating the
time when the evidence shows anything in respect to
actual possession, it would seem proper to hold that
complainants have failed to sustain the burden of proof
which they assumed when they alleged their ownership
of the soil of the alley.

Consideration of the title deeds of later date and of
the evidence touching the origin and use of the alley
lead to a like conclusion.   As we have already said, com-
plainants have not shown at any time any possession
south of their lot as now defined, except such possession
as went with the use of the alley as a passageway.

On the other hand, defendant has shown, in those un-
der whom it claims, actual possession since 1850, or
thereabouts, under a color of title extending approxi-

mately to the south line of complainants' said lot, and an exclusive user of the alley from that time down to 1866. This possession was of itself evidence of title.— *L. & N. R. R. Co. v. Philyaw*, 88 Ala. 264, 6 South. 837.

Official records show that about 1848 one Troost was employed by the city of Mobile to lay out a map of the city. A copy of so much of this map as shows the block containing the property in controversy was introduced in evidence. This map was hearsay, but it was an ancient document and came from a proper custody. It was competent to show boundary lines of private ownership.—1 Greenl. Ev. (16th Ed.) § 140a; *Taylor v. Fomby*, 116 Ala. 621, 22 South. 910, 67. Am. St. Rep. 149; *Boardman v. Reed*, 6 Pet. 328, 8 L. Ed. 415; Jones on Ev. § 308.

This map shows the McDermott lot as fronting 82 feet and 10 inches on Royal street next to St. Anthony and as improved by a brick building of 1½ stories. It shows the English property as fronting 159 feet and 1 inch on Royal street and as improved by two frame dwellings. It shows the rear part of the last-named property as divided into four lots of 28 feet, 6 inches, each, fronting on St. Louis street and improved by brick dwellings. It shows no alley opening on Royal street, though the property lines indicate that an alley had been laid off on the rear of the English lots which fronted on St. Louis street. From other sources we learn that, from 1852, at the latest the McDermott lot was used as a slave mart and was improved in a way which that use would probably suggest. A number of buildings were distributed about over the rear of the lot. The entire property to the rear of the building on Royal street was inclosed by a 15-foot brick wall. Complainants brought testimony which tended to show that

there were openings in the south wall as early as 1862, but as to that the testimony was in conflict, and we are satisfied that there were no such openings prior to 1866, about which time the property was converted into a tenement for free negroes. In the meantime—about 1850, probably even earlier—the passageway had been opened along the entire north margin of the English lots and was in use by those who occupied that property. When the McDermott property began to be used as a tenement, openings were made through the south wall for the convenience of its tenants, who thereafter used the alley without interference until 1892, when the buildings were destroyed. For these reasons we conclude, as did the chancellor, that the alley was laid off by English upon land claimed and held in possession as his own.

The first claim, on the part of those to whom the complainants have succeeded, that the lots north of the alley had a greater frontage than 72 feet in the direction of Royal street, is to be found in the deed of the master in chancery to McDermott in 1884. This deed is of the rear lot, and calls for a depth of 85.2 feet; but another and dominant description is that it extends to a point on an alley "and thence eastwardly along the north boundary line of said alley." That and several subsequent deeds giving 85 feet as the south and north dimension of the lot, to the extent they overlaid property belonging to defendant and in its possession, were mere pieces of waste paper.

In 1859 the administrator of the elder English sold, under the orders of the probate court, to John D. Ragland property described as follows: "That lot or parcel of land situate on the west side of Royal street between St. Louis and St. Anthony street in the city of Mobile, commencing at a point at the northwest corner

of the brick inclosure of the former family residence of
said decedent (shown by other conveyances and by oral
evidence to be a point 53 feet from the corner of Royal
and St. Louis streets) and running thence northwardly
along the line of Royal street ninety-four feet and one-
half to a point in an alleyway, extending thence west-
wardly in a line parallel with said brick inclosure sev-
enty-six feet, and having the same width in rear as in
front, bounded on the south by said inclosure, on the
east by Royal street, on the west by other property of
said decedent, and on the north by an alleyway." This
lot has come down to defendant with this same descrip-
tion. In 1868 the English heirs disposed of the narrow
lots to the rear of the Royal street property by deeds
which described those lots as extending to the south line
of the alley, and conveyed also "the use in common of
an alley-way of 19 feet 3 inches in width, which leads
from Royal street to the rear of the premises." De-
fendant holds those lots also under successive deeds
containing like descriptions.

Complainants contend that the descriptions of the
deed to Ragland must be taken as a recognition of their
ownership to the center of the alley, seeming to attach
importance to the expression "in an alley." It would
seem to be enough to say that the complainants are not
parties to the English deeds and take nothing by them.
They are in a position which demands that they make
good their claim on its own merits, rather than on the
weakness of the adverse claim. The argument is other-
wise faulty, in that it begs the question. It assumes
the right claimed in order to give the desired operation
to the deeds. It is not claimed that in 1859 McDermott
had acquired an easement by adverse user. As we think
we have shown, he had no title to the soil. The only
interest in the alley, or its maintenance as such, was

posesssed by the grantor estate and its grantees. Although "it is not admissible to prove that the parties intended something different from that which the written language expresses, or which may be the legal inference and conclusion to be drawn from it, yet it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, buildings, passages, * * * in order to give a definite meaning to the language used in the deed, and to show the sense in which particular words were probably used by the parties, especially in matters of description."—*Salisbury v. Andrews,* 19 Pick. (Mass.) 250; *Jacobs v. Roach,* 161 Ala. 201, 49 South. 576. On these considerations we feel sure that the descriptions in the deed must be construed as the creation or reservation—the mere phraseology is immaterial— of a right of way appurtenant to the St. Louis street property retained by the estate of English as well as that conveyed to Ragland.

Where a way, established as of legal right, divides the properties of two owners, the presumption is that each has contributed the land for the way in equal parts, and a conveyance of an abutting ownership carries a fee to the center of the way. But where, as in the present case, the way has been laid out entirely upon the land on one side of the property line, a subsequent grant by the owner must be deemed to comprehend the fee in the whole way, upon the same principle that carries the fee to the center in other cases. It results that the several conveyances, by which defendant acquired title to all the lots for the benefit of which the easement was reserved or created in the beginning, vested also in it the land covered by the easement.—*Haberman v. Baker,* 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611; *Gould v. Eastern Railroad,* 142 Mass. 85, 7 N. E. 543;

*Matter of Robbins,* 34 Minn. 99, 24 N. W. 356, 57 Am.
Rep. 40.

2.   Much of what has been already said bears upon
the question raised by complainants' claim of an ease-
ment by adverse user.   There was no user of any char-
acter by the predecessors of complainants prior to 1866,
nor subsequent to 1892.   From 1892 to 1895 the prem-
ises were vacant.   From 1895 to until shortly before bill
filed the premises on both sides were in the possession
of defendant.   "The time for acquiring an easement by
prescription does not run while the dominant and ser-
vient estates are in the occupation of the same person."
—Jones on Easements, § 166.   So, then, complainants'
right must have been acquired, if at all, in the period
from 1866 to 1892.   The title to the soil was with de-
fendant.   The user was common.   Complainants' user
was therefore presumptively permissive; and so re-
mained until it was brought home to defendant or its
predecessors that it was claimed as a right and without
regard to their wishes.   It must then have been contin-
uous—that is, without such interruptions as would in-
dicate an abandonment—for at least a period which
would pass title to land by adverse possession.—*Jesse
French Co. v. Forbes,* 129 Ala. 471, 29 South. 683, 87
Am. St. Rep. 71; *Trump v. McDonnell,* 120 Ala. 200, 24
South. 353.   But in the view we take of the testimony
there is but one circumstance which indicates an asser-
tion of right.   On one occasion a tenant on complain-
ants' lot complained that some poles, which had been
piled in the alley, were obstructing the way.   There-
upon the agent for the then owner went to Rubira, pres-
ident of the Electric Company then the owner of de-
fendant's lot, "in person and told him that he must
move them, and he did so."   This could not have been
before 1885; it may have been as late as 1890.   Rubira

had nothing to do with the alley or the lots abutting on it until his company got its deed from Ragland's heirs in 1885. The facts here shown are insufficient to establish a right of way by adverse user.

Our conclusion is that the chancellor's decree ought to be affirmed.

Affirmed.

SIMPSON, ANDERSON, and SOMERVILLE, JJ., concur.

## On Rehearing.

SAYRE, J.—On the original submission, appellants called attention to the fact that Theo. K. Jackson, defendant's agent, had in 1906 joined in a petition to the board of public works requesting that one-half of the cost of paving Royal street in front of the alley be taxed against the defendant, and that in a lease taken by defendant from complainants in 1907 the complainants' property was described as "the property owned by them at the southwest corner of Royal and St. Anthony street, and about 83 feet on Royal street, to a joint alley used by the parties of the first and second part jointly." These facts were referred to in appellants' brief as going to support their contention that appellee and its predecessors had knowledge of appellants' alleged adverse user of the alley under claim of right and had acquiesced in that use and claim. There was no suggestion that the facts referred to constituted a sufficient ground for decreeing a title by estoppel in the complainants. It then seemed, and now seems, that in view of the previous relations of the parties to this alleyway, which relations were stated in the opinion, the date of these transactions, their detachment from appellants' previous assertion of right by appellee's intervening possession, was enough to show that they were in-

sufficient either alone or in combination with the other facts to show a continuous hostile user covering the statutory period of limitation. We think they are insufficient to pass title by estoppel. So far as the act of Jackson in joining in the petition is concerned, it was deprived of all significance adverse to appellee by the undisputed explanation of it, which was that Jackson was unacquainted with the status of the title at the time, he having then just recently gone into the appellee's employment, and its title deeds being in Chicago for investigation preparatory to a loan the appellee was then negotiating; that he signed the petition on Barker's request accompanied by a statement that the alley was a joint alley; and that he gave Barker clearly to understand that he (Jackson) knew nothing whatever of the facts stated in the petition or referred to in Barker's request, and at the same time asked for further information on the subject of the title to the alley. The record fails to show that appellee ever paid any part of the tax or otherwise suffered any change of condition for the worse by reason of this petition.

As for the recital of the lease, it is not even now insisted upon as an estoppel, though it is woven into an argument looking to the establishment of an estoppel. It is still specifically referred to as a mere admission, and that it is an admission of a kind may be conceded. Its effect in that aspect has been considered. That it cannot operate to convey title by estoppel seems plain. At best it could operate only as a conveyance of appellants' right to the use of the alleyway during the term of the lease. But appellee was not taking a conveyance of a right to use the alley. That right was and is undisputed. The recital that the alley was a joint alley was wholly unnecessary to the lease and did not operate as an estoppel against the grantee to assert its own su-

perior right and title.—*Osborne v. Endicott*, 6 Cal. 149, 65 Am. Dec. 498; *Wilcoxon v. Osborn*, 77 Mo. 621; *Cooper v. Watson*, 73 Ala. 252.

In other respects the application is a restatement of propositions which have been heretofore considered. We are satisfied with the conclusion then reached.

Application denied.