THOMAS F. OAKES, Appellant, *v.* EDWARD F. DELANCEY,
Respondent.

While, where the boundary of land as given in the description in a deed
is the shore of a sea, the shore is a monument within the meaning of the
rule that fixed monuments control distances and quantities, and
while simply the word "shore" means the line of high water, this is
not controlling, and where the description runs from a fixed point, a cer-
tain specified distance, "to a point on the shore," that point may be
anywhere between high and low-water mark, to be determined by the
distance given.

By the description in a deed the starting point was accurately fixed,
the first course was stated as running along a specified line "about
eight hundred and fifty feet to a point on the shore of Long
Island sound, thence running along said shore and sound as the
same bend and turn" to their intersection with the center line of a
street named, and thence along said center line "about twelve hundred
and eighty feet to the place of beginning." It appeared by a survey
that the first and last courses, if run in obedience to the distances given,
would extend to low-water mark, and that to give the quantity the deed
purported to convey, the land to low-water mark must be included.
*Held,* that the boundary line was low-water mark; and that this conclu-
sion was not altered by the use of the word "about" in connection with
the distances, or of the words "more or less" in connection with the
quantity; that these words were intended only to cover slight and unim-
portant inaccuracies which did not weaken or destroy the indication of
distance and quantity where no other guides are furnished.

In an action by the grantee to recover back a portion of the purchase-
price paid, on the ground that the deed conveyed title only to high-
water mark, plaintiff claimed that presumably the title to the shore was
in the state. *Held,* that while this is the common-law rule, a title may
have been derived from the state or obtained by prescription, and in the
absence of an issue of title, a want of title in the grantor would not be
presumed in construing a description which implies such title.

(Argued April 13, 1892; decided April 26, 1892.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
July 14, 1891, which affirmed a judgment in favor of defend-
ant entered upon a decision of the court on trial without a
jury.

This action was brought to recover the sum of $11,987.50, with interest from July 8, 1890, which amount plaintiff alleged he overpaid to the defendant upon the purchase of a tract of land at DeLancey's Neck in the town of Mamaroneck, Westchester county, N. Y., known as "Vergemere." That by the terms of the auction sale at which it was bought, it was described as containing $22\frac{57}{100}$ acres, but contained only $18\frac{734}{1000}$ acres.

The material facts are stated in the opinion.

*Artemas H. Holmes* for appellant. The deed does not cover and convey the land between ordinary high and low-water mark upon which the upland, on the easterly and southerly sides, abuts. (*Thayer* v. *Finton*, 108 N. Y. 394, 397; *Masten* v. *Olcott*, 101 id. 152, 158; *Norton* v. *Hughes*, 17 Abb. [N. C.] 287; Gerard on Titles [3d ed.], 509, 517; *Fenlite* v. *Sinnot*, 125 N. Y. 683; *Green* v. *Collins*, 86 id. 246; *Griffiths* v. *Morrison*, 106 id. 165.) To a point on the shore of Long Island sound, in the deed, means ordinary high-water mark; shore being the land between ordinary high and low-water mark, land over which the daily tides ebb and flow. (3 Washb. on Real Prop. [5th ed.] 446, 447; *Wheeler* v. *Spinola*, 54 N. Y. 377, 385; *Canal Comrs.* v. *People*, 5 Wend. 443; *People* v. *Tibbitts*, 19 N. Y. 523; *Gould* v. *H., etc., R. R. Co.*, 6 id. 522; *People* v. *Canal Appraisers*, 33 id. 461; *Mayor* v. *Hart*, 95 id. 443; *Cortelyon* v. *Van Brunt*, 2 Johns. 357, 362; *Storer* v. *Freeman*, 6 Mass. 435; *Peyroux* v. *Howard*, 7 Pet. 324; *Howard* v. *Ingersol*, 13 How. Pr. 381, 421; *Barney* v. *City of Keokuk*, 94 U. S. 324, 326; *United States* v. *Pacheco*, 2 Wall. 587, 590.) The language of the deed, "and thence running along said division line * * * about 865 feet to a point on the shore of Long Island sound, thence running along said shore and sound as the same bend and turn, etc.," does not carry the northerly line or course of the premises beyond high-water mark. The same is true of the language of the deed describing the westerly line or course from beyond high-water mark. (3 Washb. on Real Prop. [5th ed.] §§ 39, 40; *Jackson*

v. *Young*, 1 Cow. 605, 612; *Jackson* v. *Butler*, 7 id. 723; *Drew* v. *Swift*, 46 N. Y. 204, 207; *Robinson* v. *Kime*, 70 id. 147, 154; *Armstrong* v. *Du Bois*, 90 id. 95; *Benson* v. *Townsend*, 4 N. Y. Supp. 860; *Masten* v. *Olcott*, 101 N. Y. 152; *Thayer* v. *Finton*, 108 id. 394; *Muhlker* v. *Ruppert*, 124 id. 627.) The description in the deed, so far as it relates to the boundaries on Long Island sound, on the easterly and southerly sides of the premises, does not convey beyond high-water mark. (*Thayer* v. *Finton*, 108 N. Y. 397; *Coleman* v. *M. B. Co.*, 94 id. 229; 3 Washb. on Real Prop. 447, § 50.) The rule of construction contended for by plaintiff, that courses and distances and quantity must yield to monuments, especially to natural monuments, as boundaries, and that courses must be varied and distances varied so as to conform to the natural objects or bounds called for by the grant, is not absolute or inflexible. (*Higginbottom* v. *Stoddard*, 72 N. Y. 94.) The decision in *Storer* v. *Freeman* (6 Mass. 435) has been approved and followed by the courts of this state and of the United States, and should control the case at bar.

*Martin J. Keogh* for respondent.

FINCH, J. The only question raised by this appeal is over the true construction of the deed given by the defendant. The premises were described as " Vergemere," and bounded on the north and east by the waters of Long Island sound, and the dispute is whether the description of the conveyance includes or excludes the strip of land on the water fronts between high and low water and which constitutes the shore. The description is thus phrased : " Beginning at a point in the center line of an avenue sixty feet wide, known as De Lancey a enue, which point bears south forty-two degrees and forty-seven minutes west, thirty feet from the point of intersection of the division line between the property hereby conveyed and the land conveyed by the late Peter John De Lancey of Geneva, New York, to James J. Burnett, with the northeasterly line of said De Lancey avenue, and thence running along said

division line north forty-two degrees and forty-seven minutes east, about eight hundred and sixty-five feet to a point on the shore of Long Island sound; thence running along said shore and sound as the same bend and turn, easterly and then southerly to their intersection with the center line of De Lancey avenue aforesaid, and thence running along said center line of said De Lancey avenue forty-nine degrees and fifty-five minutes west, about twelve hundred and eighty-eight feet to the point or place of beginning, containing twenty-two acres and fifty-seven hundredths of an acre of land, be the same more or less."

It will be observed that the starting point of this description is fixed with accuracy and care, and the surveys show that the first course, if run in obedience to the distance given, will extend to low-water mark, and that the last course, to obey the same requirement of distance, must start at low-water mark on the easterly water front. The surveys also show that the strip between high and low water must be included in order to correspond with the quantity of land which the deed purports to convey. The courses and distances and the quantity of land carry the description to low-water mark, and can only be satisfied by including the area of the shore.

But the appellant, relying upon the rule that fixed monuments control, and distances and quantities must yield to their safer and superior authority, insists that the shore is such a monument, and by the shore is always meant the line of high water when the boundary is the sea. That is undoubtedly true, and would be decisive if the first course ran simply to the shore. But it does not. It goes, not to the shore, but "to a point on the shore." That point may be anywhere upon the strip lying between high and low water, and where it is must be determined, and can only be determined, by the sole direction furnished, which is the distance. That distance fixes the point at the outer or low-water line of the shore, and so, and only so, is the description satisfied. The first course ends at "a point on the shore" and about eight hundred and sixty-five feet from the fixed starting point. Having found

this "point on the shore," we are required to go "along said shore and sound" easterly and then southerly. Starting thus on the line of low water, we must follow that line. The words are not only along the shore, but also along the sound, and a line starting at low water and then running away from it on a diagonal to the line of high water and thence easterly on that line is neither described nor intended. It would fail again when the return course to the starting point is reached. That calls for about twelve hundred and eighty-eight feet, and can only be satisfied by beginning the course at low-water mark. To these indications of the intent must be added the quantity of land stated to be conveyed, which requires the inclusion of the shore, and is seriously defective if that be excluded. The use of the words "more or less" in connection with the quantity, and the use of the word "about," as qualifying the distance, do not alter the conclusion to be drawn. They are words of safety and precaution, and intended to cover some slight or unimportant inaccuracy, and while enabling an adjustment to the imperative demands of fixed monuments, do not weaken or destroy the indications of distance and quantity when no other guides are furnished. (*Belknap* v. *Sealey*, 14 N. Y. 143.)

The appellant further insists that the title to the shore is presumably in the state. That, with us, is the common-law rule, but does not exclude the possibility of title in the grantor derived from the sovereign or obtained by prescription. There is no question of title in the case and we know nothing about it. Certainly we ought not to presume a want of title in the grantor in order to construe a description which implies such title.

There is nothing in the case of *Storer* v. *Freeman* (6 Mass. 435), upon which the appellant mainly relies, adverse to our conclusion. In that case the description in the first deed ran "to the shore," which was held to be the line of high water. In the second deed the course ended at a heap of stones "at the shore," and ran thence "by the shore." That heap of stones at "William Elwell's corner" was treated as a possible

monument which, if found at the line of low water, would carry the description there, and thence " by the shore " would follow the line of low water.   The point on the shore, or at the shore, fixed in that case at low water by a monument in the form of a heap of stones at a corner, is fixed here without a monument by the sole remaining guides, which are distance and quantity, at a point on the shore at low-water mark.

We think the judgment is right and should be affirmed, with costs.

All concur.

Judgment affirmed.