## CONNELLY v. FISH et al.

(Supreme Court, Trial and Special Term, Chemung County.)

1. BOUNDARIES &8—DESCRIPTION—EVIDENCE.

A deed conveying a vacant lot described it as bounded by beginning at a point in the east line of a street at the southwesterly corner of the grantor's brick building; thence along the building and including one-half of the wall thereof; thence on a line parallel with the street, 25½ feet, more or less, to an iron wall; thence westerly on a line parallel with the brick building and 25½ feet or thereabouts distant therefrom; thence northerly along the street 25½ feet or thereabouts. The grantee, before purchasing, made measurements, and his measurements were 25½ feet as designated in the deed when measured from the center of the wall of the brick building. When the grantee excavated for the purpose of building, he found a stone monument in line with the center of the wall of the brick building. He subsequently used the wall as a party wall. *Held*, that the deed conveyed to the center of the wall.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 66–76; Dec. Dig. &8.]

2. PARTY WALLS &5—STRUCTURES CONSTITUTING PARTY WALLS—RIGHTS OF PARTIES.

Where a deed conveyed to the grantee to the center of a wall of a building of the grantor, and the parties treated the wall as a party wall.

the wall must be deemed a party wall; but the easement of joint use therein did not survive the destruction of the wall occurring without the fault of either party.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. §§ 11–13, 567; Dec. Dig. ⬤⇒5.]

3. EJECTMENT ⬤⇒114—JUDGMENT—RIGHT TO POSSESSION.

Where plaintiff in ejectment was entitled to recover a strip occupied in part by a wall of defendant, the court will render judgment of eviction, unless defendant will deliver to plaintiff an agreement permitting the use of the wall as a party wall.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 352–370, 372, 374–378; Dec. Dig. ⬤⇒114.]

Action by Thomas F. Connelly against Edwin C. Fish and others. Judgment for plaintiff.

Michael Danaher, of Elmira, for plaintiff.

Monroe Wheeler, of Bath, for defendants.

KILEY, J.    This action was tried at a term of the Supreme Court held in the county of Chemung on the 23d day of November, 1914. It is an action in ejectment, brought by the plaintiff against the defendants to recover possession of a strip of land which plaintiff alleges defendants withhold from him. Jury was waived, and the case tried before the court without a jury. A general outline of the situation and facts surrounding the controversy, before the dispute arose, is briefly as follows:

Previous to the 3d day of March, 1900, Wilbur W. Fish and Eliza F. Fish, his wife, sold to Thomas Connelly, the plaintiff in this action, by contract, a vacant lot situate on the east side of State street in the city of Elmira. At the time of such sale said Fish owned the adjoining lot on the north, and I conclude the lot he sold and the lot he retained constituted, at the time he purchased it, a single lot. Immediately to the north of the vacant lot sold to Connelly there stood upon the portion retained by Fish a four-story brick building. Subsequently, and on March 3, 1900, the said Fish executed, acknowledged, and delivered to Connelly a warranty deed of the property so sold to him. On April 10, 1913, Wilbur W. Fish died. Conveyances of the property were made between the Fish heirs, so that the defendant Edwin C. Fish became the owner of the property immediately north of plaintiff's property; the defendant Wilbur P. Fish taking a mortgage upon that property from the defendant Edwin C. Fish, which mortgage still exists. The defendants Norman J. Thompson and Merle D. Thompson, a copartnership, are tenants of said brick building on defendants' lot. The building stood there at the time of the sale to plaintiff. The foundation was of stone, the height was 7 feet, and it was 2 feet wide. The four stories built upon the stone foundation were of brick 16 inches wide, and so constructed as to stand 8 inches each side of the center line of the stone foundation. The defendants Edwin C. Fish and Wilbur P. Fish are sons of Wilbur W. Fish, plaintiff's grantor. Previous to the death of Wilbur W. Fish, and in the year 1900, the plaintiff, Thomas F. Connelly, constructed a brick building upon his vacant lot,

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

using the south wall of the building upon the Fish lot as his north wall, and occupied it from the time of such construction until March 13, 1913, when both the Fish and Connelly buildings were destroyed by fire, rendering the south wall of the Fish building and the north wall of the Connelly building (being a single wall, and the same) so impaired that it was of no value down to the stone foundation. The defendant Fish immediately rebuilt a brick building four stories in height, placing his south wall upon the former stone foundation, in the same position occupied by the original wall, viz., a 16-inch brick wall 8 inches each side of the center line of the 2-foot stone foundation. The plaintiff sought to be considered in the building of that wall. The defendant stated, and continues to assert, that the plaintiff, Connelly, had no interest in the wall; that he did not own the land under the wall, and excluded, and continues to exclude, him from the use of the wall, or the 12 inches constituting the south one-half of the stone foundation, and the 8 inches constituting the south one-half of the four-story brick wall, and the land upon which the structure stands.

[1] The first question to decide is whether the plaintiff or defendant owns the 12 inches of land under the south one-half of the stone foundation, and the 8 inches occupied by the south one-half of the four-story brick wall. To determine that question we must have recourse to the description contained in the deed—what the evidence shows as to what occurred between the parties at the time the deed was given and the use of the wall between the parties entitled to use the same before its destruction. The description in the deed to the plaintiff from his grantor reads as follows:

"All that tract or parcel of land, situate in the city of Elmira, county of Chemung, and state of New York, bounded and described as follows: Beginning at a point in the east line of State street, in said city, at the southwesterly corner of first party's brick building; thence easterly along the line of said brick building and including one-half of the southerly wall thereof one hundred feet; thence southerly on a line parallel with State street twenty-five feet and six inches, more or less, to an iron wall; thence westerly on a line parallel with the aforesaid brick wall and twenty-five feet and six inches, or thereabouts, distant therefrom, one hundred feet, to State street; thence northerly along State street twenty-five feet and six inches, or thereabouts, to the place of beginning."

It will be seen that the line involved here is the first line run in the description and which reads as follows:

"Beginning at a point in the east line of State street, in said city, at the southwesterly corner of first party's brick building; thence easterly along the line of said brick building and including one-half of the southerly wall thereof one hundred feet."

The contention of the defendant is that this line commences at the point where the outside brick was exposed, the southwest edge of such brick, and that the line then runs east along the outside of the wall of the building. Assume that the corner was round; where would the line commence? The starting point refers to the brick column between the internal and external lines. And in describing the lot conveyed to plaintiff, where could the measurement of plaintiff's north line be made, except along the south side of the brick building? It will be

noted that the grantor of the plaintiff included one-half of the southerly wall. It was recognized between plaintiff and his grantor that he owned one-half of the southerly wall. Under this description, did plaintiff's line run south of what was conveyed to him, viz., on the outside of the southerly wall? What the parties actually did, in view of the uncertainty of the line involved in this dispute, must be considered in reaching a conclusion as to where the line was intended to be when the property was conveyed to plaintiff. Plaintiff swears that at the time he purchased the property, and prior to that time, he made measurements of the property on State street. It will be noted that the consideration for this 25 feet and 6 inches furnished was $4,200, not quite $200 a foot. It may be fairly inferred that the parties made measurements of the property to be conveyed, as a small fraction of a lineal foot was worth a considerable sum in dollars. It is not left wholly to inference, as it will appear from the evidence.

Plaintiff swears that the measurements were 25½ feet, and that that distance measured from the center line of the south wall to an iron wall 25 feet and 6 inches. That that iron wall was corrugated sheet iron covering the north wall of the Baldwin building; that he measured the foundation of the brick wall on the south side of the Fish building, and that they were found as given above, 24 inches and 16 inches, respectively. He was asked, upon cross-examination, who measured with him, or whether anybody did, and he stated that he did not keep a memoranda of the measurements, and did not state if anybody was with him, or who was with him. On cross-examination he stated that he made these measurements in 1900, before and after he purchased the property; that he used a steel tape. He said he would not say that he did it himself, but had no recollection of anybody helping him. In answer to the following question put by counsel for the defendant, "Q. Have you any recollection of any one being with you and pointing out any line or corner at the time you made those measurements?" plaintiff answered, "Mr. Fish pointed out where my line went." It subsequently developed that the Fish he referred to was his grantor. He had died previous to the time of the trial. That evidence was stricken out, so that the measurements made by the plaintiff from the center of the Fish-Connelly wall to the corrugated iron wall on the opposite side of his lot, 25 feet and 6 inches, stands unsupported by the evidence that the plaintiff's grantor told him from what point to measure, except that when we turn to the deed we find incorporated in the deed the exact measurements sworn to by the plaintiff. After those several measurements the words "more or less" and "thereabouts" are used.

The evidence discloses that over this wall, on the south of plaintiff's lot, covered with corrugated iron, the eaves projected 3 or 4 inches, and it was undoubtedly considered by the parties; that Connelly, in building, unless he had an agreement for a party wall between himself and Baldwin, could not build up to the corrugated wall, and Connelly did subsequently build on the south side of his lot. It was a party wall between him and Baldwin. It was a stone foundation 24 inches wide. A brick wall, built by Baldwin and Connelly upon that stone foundation, was 12 inches wide; so that from the center of the brick wall, as

it formerly existed between Fish and Connelly, to the center of the brick wall between Baldwin and Connelly, is a distance of 25 feet and 3 inches, tending to show that the 3-inch eaves, extending out over the corrugated iron, was understood and considered in all these measurements.

I am of the opinion that the evidence shows that the parties to the deed from Wilbur W. Fish to Thomas F. Connelly, executed and delivered on the 3d day of March, 1900, intended to convey, and I find that they did convey, to the center of the south Fish wall, and intended to convey, and did convey, the land under that portion of said wall to the plaintiff. The deed shows that exact measurements were made. That could not have been made without some indication where they should be made—starting point, etc.—by plaintiff's grantor. The words "more or less" and "thereabouts," used in this deed, are accounted for by the running of that line to the corrugated wall under the eaves that projected, and as said in Oakes v. De Lancey, 133 N. Y. 227, 30 N. E. 974, 28 Am. St. Rep. 628:

"They are words of safety and precaution, and intended to cover some light or unimportant inaccuracy, and, while enabling an adjustment to the imperative demands of fixed monuments, do not weaken or destroy the indications of distance and quantity when no other guides are furnished."

To construe the phrase as contended by defendants would take from plaintiff $300 worth of land at present value, and nearly two-thirds of that sum at value in 1900. The evidence discloses that, when the plaintiff excavated for the purpose of building, he found a stone manument in his south line about six inches across the top, with a groove cut in the center. The center of the wall that he and Baldwin built was in line with the center groove of this stone monument. The measurement from the center of the Fish-Connelly wall on the north side of the Connelly lot to the center of this monument (center line of the Baldwin-Connelly wall) was 25 feet 3 inches, bearing out plaintiff's contention that the eaves projecting over the corrugated iron wall 3 inches was on the Baldwin lot and was covered by the expression "more or less," and was so considered between the contracting parties in the Fish-Connelly deed.

[2] The defendant contends that the wall in question was a party wall. There is nothing in the deed stating that it should be used as a party wall, or as to how it should be maintained, or as to how it should be used. It merely conveys to the plaintiff one-half thereof; but the use of it made by the parties indicated that it was intended and treated as a party wall, and no other finding is consistent with the description in the deed and the subsequent use thereof by the owners, and although the wall rested equally upon the lands of Fish and Connelly, it was a party wall, but the easement of joint use therein, to the interest of both parties, did not survive the destruction of the wall as long as that destruction occurred without fault of either of the owners. This proposition is settled, I think for the first time, in the Court of Appeals in Heartt v. Kruger, 121 N. Y. 386, 24 N. E. 841, 9 L. R. A. 135, 18 Am. St. Rep. 829. It was an appeal from a decision of the General Term, reported in 56 N. Y. Super. Ct. 382,

5 N. Y. Supp. 192. The rule is distinguished and approved in Douglas v. Coonley, 156 N. Y. 521, 51 N. E. 283, 66 Am. St. Rep. 580. That case, like this one, is an action in ejectment brought by the plaintiff to remove the defendant from six inches of ground upon which the defendant had rebuilt a party wall. Judgment was for the plaintiff, and it was affirmed in both courts.

[3] It was intimated upon the trial of this action that if the plaintiff had judgment an effort would be made in the judgment to avoid compelling the defendant to remove the portion of the wall standing upon plaintiff's land. I am still of the opinion that such ought to be the result, but it is questionable whether the complaint is broad enough to escape the criticism found in Hahl v. Sugo, 169 N. Y. 109, 62 N. E. 135, 61 L. R. A. 226, 88 Am. St. Rep. 539.

However, while the plaintiff must have judgment for the relief demanded in the complaint, to wit, eviction of defendants from 12 inches of land herein found to belong to him, let such judgment contain the further provision that within 20 days after a copy of the judgment is served upon the defendants, the said defendant Edwin C. Fish may execute and deliver to the plaintiff an agreement permitting the plaintiff, his heirs, executors, administrators, and assigns, to use the wall as now erected as a party wall, and also a release from his mortgagee for that portion of the land, to wit, 12 inches found to belong to plaintiff. If the defendant refuses or neglects to so agree, stipulate, and procure said release, then let the judgment of eviction against the defendants become effective. If the defendant Edwin C. Fish shall elect to deliver the conveyance and release above provided for to the plaintiff and pay the costs of the action to plaintiff, the requirements of the judgment may be deemed satisfied.

Findings and judgment accordingly may be prepared, with costs to the plaintiff against the defendant Edwin C. Fish.